UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEREK T. CHAPPELL, | ) | CASE NO. 1:03 CV 1983 |
| | ) | |
| Plaintiff, | ) | JUDGE ANN ALDRICH |
| | ) | |
| vs. | ) | |
| | ) | |
| UNIVERSITY HOSPITAL HEALTH | ) | |
| SYSTEM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO DISMISS FOR FAILURE TO PROSECUTE

Pursuant to Rule 56(B) of the Federal Rules of Civil Procedure, Defendants University Hospital Health System ("UHHS") and University Hospitals Faculty Services, Ltd. ("UHFS") (collectively, "Defendants") respectfully move this Court for summary judgment in their favor and against Plaintiff Derek T. Chappell with respect to all of Plaintiff's claims against Defendants. There are no issues of material fact, and Defendants are entitled to judgment as a matter of law.

In the alternative, Defendants move the Court pursuant to Rule 41(b) for an order dismissing Plaintiff's Complaint with prejudice for failure to prosecute as a result of Plaintiff's failure to respond to long overdue discovery.

The grounds for this motion are set forth with more particularity in the following memorandum in support.

Respectfully submitted,

OF COUNSEL:

HAHN LOESER & PARKS LLP

_____ /s/ James M. Drozdowski _____
James M. Drozdowski (0065215)
Steven E. Seasly (0070356)

3300 BP Tower
200 Public Square
Cleveland, Ohio  44114
(216) 621-0150 – telephone
(216) 241-2824 – facsimile
jmdrozdowski@hahnlaw.com
sseasly@hahnlaw.com

Attorneys for Defendants
University Hospital Health System and
University Hospitals Faculty Services, Ltd.

2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEREK T. CHAPPELL, | ) | CASE NO. 1:03 CV 1983 |
| | ) | |
| Plaintiff, | ) | JUDGE ANN ALDRICH |
| | ) | |
| vs. | ) | |
| | ) | |
| UNIVERSITY HOSPITAL HEALTH | ) | |
| SYSTEM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION TO DISMISS
FOR FAILURE TO PROSECUTE**

COL - 94332.2

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................1

II.  STATEMENT OF FACTS ...................................................................................1

    A.  Plaintiff's Duties. ......................................................................................1

    B.  UHFS Decides To Reduce Its Force Due To Financial Constraints ........................2

    C.  Plaintiff's Former Job Duties Are Outsourced And Absorbed By Other Existing Employees. ........................................................................2

    D.  Plaintiff's *Position* Was Eliminated, But He Remains Employed With UHHS ...........................................................................................3

III.  PROCEDURAL HISTORY ..................................................................................4

IV.  LAW AND ARGUMENT ....................................................................................6

    A.  Standard Of Review. .................................................................................6

    B.  Defendants Are Entitled To Summary Judgment Because Plaintiff's Claims Are Barred By The Doctrine Of *Res Judicata* ......................7

        1.  The final judgment of the State Court Action is entitled to the full faith and credit of this Court ..............................................7

        2.  The doctrine of *res judicata* in Ohio ......................................7

        3.  The preclusive effect of a state court's judicial review of an administrative finding. ........................................................8

        4.  Plaintiff's State Court Action bars this action. ..............................8

    C.  Defendants Are Entitled To Summary Judgment On The Merits .....................9

        1.  Plaintiff cannot establish a prima facie case of discrimination. ...................................................................9

        2.  Plaintiff cannot show that UHFS' reduction in force was pretextual ........................................................................11

        3.  Plaintiff's emotional distress claims fail as a matter of law. ...............11

        4.  Plaintiff's implied contract claim finds no support in the facts. ........................................................................13

    D.  Plaintiff Failed To Satisfy A Condition Precedent For Asserting Title VII Race And Gender Discrimination Claims Against UHHS And A Title VII Race Claim Against UHFS. ........................................14

    E.  UHHS Did Not Employ Plaintiff At Any Time Relevant To The Allegations Of The Complaint And, Therefore, Bears No Liability To Plaintiff Under *Any* Theory Of Recovery. ..........................................15

F.  Plaintiff's Admissions Leave No Opportunity For Him To Create An Issue Of Material Fact. .................................................................................... 15

G.  Given Plaintiff's Complete Disregard Of The Discovery Process, Plaintiff Should Not Be Permitted To Support His Claims Against Defendants. ............................................................................................................ 17

H.  Plaintiff's Complaint Should Be Dismissed With Prejudice Because Of His Failure To Prosecute. ................................................................. 18

COL - 94332.2

# TABLE OF AUTHORITIES

## CASES

*Austin v. Miami Valley Hospital*,
    483 N.E.2d 1185 (Ohio Ct. App. 1984)........................................................................8

*Baab v. AMR Services Corp.*,
    811 F. Supp. 1246 (N.D. Ohio 1993)..........................................................................12

*Bryans v. English Nanny & Governess Sch., Inc.*,
    690 N.E.2d 582 (Ohio Ct. App. 1996)........................................................................12

*Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*,
    862 F.2d 597 (6th Cir. 1988)......................................................................................15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)......................................................................................................6

*Creedon v. Taubman*,
    8 F.R.D. 268 (N.D. Ohio 1947)..................................................................................15

*Grava v. Parkman Township*,
    653 N.E.2d 226 (Ohio 1995)........................................................................................7

*Humphreys v. Bellaire Corp.*,
    966 F.2d 1037 (6th Cir. 1992)....................................................................................13

*In re Brantley*,
    518 N.E.2d 602 (Ohio Ct. App. 1987)..........................................................................9

*In re Mack*,
    330 F. Supp. 737 (S.D. Tex. 1970)............................................................................15

*Kane v. Magna Mixer Co.*,
    71 F.3d 555 (6th Cir. 1995)..........................................................................................9

*Lovejoy v. Owens*,
    No. 94-4224, 1996 WL 287261....................................................................................15

*Marrese v. American Academy of Orthopaedic Surgeons*,
    470 U.S. 373 (1985)......................................................................................................7

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)................................................................................................9, 10

*Price v. Total Building Service, Inc.*
(6th Cir. 1996), No. 96-1227,
1996 U.S. App. LEXIS 29095 (6th Cir. Oct. 30, 1996)................................................16

*Reynolds v. Wingers, Inc.,*
621 N.E.2d 1239 (Ohio Ct. App. 1993).......................................................................12

*Rivers v. Barberton Bd. of Education,*
No. 96-4404, 143 F.3d 1029 (6th Cir. 1998) ...........................................................9, 14

*Scott v. Goodyear Tire & Rubber Co.,*
160 F.3d 1121 (6th Cir. 1998) ....................................................................................10

*Shelar v. Shelar,*
910 F. Supp. 1307 (N.D. Ohio 1995)........................................................................7, 9

*Smith v. Chrysler Corp.,*
155 F.3d 799 (6th Cir. 1998) ......................................................................................11

*Sorge v. Greater Parma Umpires Assn.,*
No. 38763, 1979 Ohio App. LEXIS 9051 (Ohio Ct. App. May 10, 1979)................16

*Stallings v. Goshen Dairy Stores, Inc.,*
No. 95-3228, 1996 U.S. App. LEXIS 19128 (6th Cir. 1996) ...................................8, 9

*Stone v. Williams,*
970 F.2d 1043 (2d Cir. 1992)........................................................................................7

*Texas Department of Community Affairs v. Burdine,*
450 U.S. 248 (1981)........................................................................................................9

*Tolton v. American Biodyne, Inc.,*
48 F.3d 937 (6th Cir. 1995) ...........................................................................................6

*Tschantz v. Ferguson,*
647 N.E.2d 507 (Ohio Ct. App. 1994. *See also, Dobran v. Franciscan Med.
Ctr.,* 806 N.E.2d 537 (Ohio 2004) .............................................................................13

*Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of
America,*
453 N.E.2d 666 (Ohio 1983)........................................................................................12

## STATUTES

28 U.S.C. § 1738.............................................................................................................7, 8

## RULES

Fed. Civ. R. 26(g)(2) ........................................................................................................16

Fed. Civ. R. 36 .................................................................................................................16

Fed. Civ. R. 37 .................................................................................................................17

Fed Civ. R. 56 ............................................................................................................6, 17

Ohio Civ. R. 41(B)(1) ...................................................................................................5, 8

Ohio Civ. R. 37 ..................................................................................................................8

## I.  **INTRODUCTION**

Plaintiff has demonstrated a bad habit of filing complaints and then doing nothing more with the case.  In a matter related to this case, Plaintiff's state court complaint was dismissed with prejudice for failure to prosecute.  Plaintiff then filed his Complaint in this case, complete with slightly modified causes of action based on the same bald-faced allegations of discrimination and, thereafter, did ***absolutely nothing***.  Rather than showing respect for the judicial process, Plaintiff has ignored discovery requests and Defendants' continuing attempts to obtain compliance, and generally treated the Federal Rules of Civil Procedure as mere suggestions.

As a consequence of the foregoing, Plaintiff's claims are barred by the doctrine of *res judicata* and, in any event, he cannot state even a prima facie claim for relief under any of his causes of action.  For all these reasons, Defendants are entitled to judgment as a matter of law.

## II.  **STATEMENT OF FACTS**

Plaintiff Derek Chappell began employment with University Hospitals of Cleveland ("UHC") on May 25, 1988.  On October 4, 1998, his position was transferred to UHFS, which was a newly-created management services organization.[1]  Plaintiff was employed by UHFS from October 4, 1998 until his position was eliminated on August 5, 2002.  Pasco Aff. at ¶5.

### A.  **Plaintiff's Duties.**

At all times relevant to the allegations of the Complaint, Plaintiff worked as an Internal Mail Courier/Transporter in the Department of Orthopedics.  His duties consisted of: (i) sorting and delivering incoming mail to the appropriate employees; (ii) preparing outgoing mail in the mailroom; (iii) picking up and delivering x-rays and patient charts to the various Orthopedic

---

[1] Affidavit of David Pasco at ¶ 4.  (hereinafter "Pasco Aff. at ¶ __").  The original affidavit of Mr. Pasco is attached as Exhibit A.

offices; (iv) maintaining the stock of blank charts; and (v) notifying the Purchasing Manager when additional blank charts needed to be ordered. Pasco Aff. at ¶6.

**B.    UHFS Decides To Reduce Its Force Due To Financial Constraints.**

In approximately July 2002, UHFS determined that it was necessary to eliminate several positions, due to financial constraints. A total of six UHFS employees were impacted by this reduction in force. Five of the employees laid off were female. Plaintiff was the only male employee who was laid off as part of the reduction in force. Pasco Aff. at ¶7. Plaintiff was 45 years old at the time of the reduction in force. *Id.* at ¶16. The ages of the other five employees impacted by the reduction in force were 25, 31, 45, 47 and 55. *Id.* at ¶7.

Plaintiff's position was eliminated because UHFS determined that his primary job functions could be handled by the UHC mail delivery service at a lower cost. *Id.* at ¶8. Plaintiff had been employed by UHFS as an Internal Mail Courier/Transporter as a benefit to the Department of Orthopedics to achieve more expedient delivery of medical charts and mail. *Id.* Due to growing financial constraints, however, this became a luxury that UHFS could not afford to deliver. *Id.* At the time of his layoff, Plaintiff was the only employee performing the job functions of an Internal Mail Courier/Transporter on a regular basis. *Id.*

**C.    Plaintiff's Former Job Duties Are Outsourced And Absorbed By Other Existing Employees.**

Since Plaintiff's position was eliminated on August 5, 2002, the amount of mail coming into the Department of Orthopedics has decreased because approximately 50% of the mail is now sorted by UHC and delivered directly to the appropriate offices. Pasco Aff. at ¶9. The remaining mail is picked up and delivered by one of two UHFS employees: Denise Upchurch or Twinia Wells. *Id.* at ¶10.

2

Prior to August 5, 2002, Ms. Upchurch worked as a Chart Room Coordinator. In that capacity, she was responsible for: (i) maintaining files and patient charts in the Chart Room; (ii) coordinating the pulling of inactive charts for off-site storage according to purging standards; and (iii) entering and updating information for patient chart inventory purposes. *Id.* at ¶11. Prior to August 5, 2002, Ms. Wells worked as a General Clerk. In that capacity, she was responsible for: (i) sorting and filing documents into patient charts, and then filing the patient charts in the Chart Room; and (ii) assisting in the filing of documents in various physician offices in the Department of Orthopedics. *Id.* at ¶12. From time to time prior to August 5, 2002, Ms. Upchurch and/or Ms. Wells performed Plaintiff's job duties, for example, when he was on lunch, vacation, or otherwise not scheduled to work. *Id.* at ¶13. The primary job duties for Ms. Upchurch and Ms. Wells remain in the Chart Room. *Id.* at ¶14.

### D.    Plaintiff's *Position* Was Eliminated, But He Remains Employed With UHHS.

Plaintiff's job as an Internal Mail Courier/Transporter was chosen for elimination because the majority of the tasks of the position became unnecessary after the mail delivery system was reorganized under UHC. Pasco Aff. at ¶15. In contrast, Ms. Upchurch's and Ms. Wells' positions in the Chart Room were not eliminated because they remained essential, even after the reorganization. Plaintiff did not work in the Chart Room prior to the elimination of his position. *Id.*

Plaintiff, Ms. Upchurch and Ms. Wells are all African-American. *Id.* at ¶16. At the time of the elimination of Plaintiff's position, he was 45 years old. *Id.* Ms. Upchurch and Ms. Wells were 44 years old and 45 years old, respectively. *Id.*

The decision to eliminate Plaintiff's position was solely based on non-discriminatory factors. In the estimation of UHFS, it made good business sense to eliminate the Internal Mail Courier/Transporter position, since the duties of that position could be handled more cost

3

effectively by UHC and two UHFS employees (Ms. Upchurch and Ms. Well) who had additional, needed experience working in the Chart Room. *Id.* at ¶17.  Race, age and/or sex had nothing to do with the decision to eliminate Plaintiff's position.  Of the six employees who were laid off, Plaintiff was the only male.  His former work is now being performed by two other African-American employees who are virtually the same age as Plaintiff (Ms. Upchurch and Ms. Wells), and an outside source (UHC). *Id.* at ¶¶16, 18.

At all times relevant to the allegations of the Complaint, Plaintiff was an at-will employee of UHFS.  He had no contractual relationship with UHFS, and his position could be eliminated at any time, for any reason. *Id.* at ¶19.  At no time relevant to the allegations of the Complaint was Plaintiff employed by UHHS.  After his position was eliminated with UHFS, however, Plaintiff was hired to work for UHHS.  He remains employed by UHHS to this day. *Id.* at ¶20.

## III.  **PROCEDURAL HISTORY**

On October 8, 2002, Plaintiff responded to the elimination of his position with UHFS by filing a charge of gender discrimination with the Ohio Civil Rights Commission ("OCRC"). Following an investigation into Plaintiff's claims, the OCRC issued a No Probable Cause determination on March 20, 2003.[2]  On April 21, 2003, Plaintiff filed a complaint for judicial review of the OCRC's determination that the evidence did not support a charge of discrimination against UHFS (the "State Court Action").[3]  In the State Court Action, Plaintiff named UHFS and the OCRC as defendants.  The trial court established a briefing schedule for the case and ordered Plaintiff to file his brief by June 26, 2003.[4]  Plaintiff never filed a brief.

---

[2] A true and accurate copy of the No Probable Cause determination is attached as Exhibit B.

[3] A true and accurate copy of Plaintiff's complaint in the State Court Action is attached as Exhibit C.

[4] A true and accurate copy of the trial court's scheduling order is attached as Exhibit D.

COL - 94332.2

UHFS and the OCRC promptly filed separate motions to dismiss the State Court Action, pursuant to Ohio Civ. R. 41(B)(1), based on Plaintiff's failure to prosecute his claims for relief. The trial court granted both motions on July 29, 2003,[5] and, thus, the State Court Action was dismissed *on the merits and with prejudice*. *See* Ohio Civ. R. 41(B)(1).

On September 22, 2003, Plaintiff filed his Complaint in this Court, again asserting that his employment with UHFS was wrongfully terminated. In addition to asserting the same claim of discrimination which was dismissed with prejudice in the State Court Action, Plaintiff also pled claims for retaliation, breach of contract, negligence, and intentional infliction of emotional distress against UHFS and against a new party, UHHS. As the Complaint makes clear, all of these claims, whether asserted against UHFS or UHHS, arise from the elimination of Plaintiff's position as an Internal Mail Courier/Transporter in the Department of Orthopedics.

On January 23, 2004, this Court issued a Case Scheduling Order, which set the discovery cut-off for June 30, 2004. Thereafter, on March 23, 2004, Defendants served their first set of written discovery upon Plaintiff, including requests for admission, requests for production of documents and interrogatories. On April 26, 2004 – the discovery response deadline – Plaintiff faxed his unsigned "responses" to Defendants' requests for admission.[6]  Plaintiff's attempted responses were simply typed onto the original discovery request, without so much as a signature from Plaintiff's counsel. Plaintiff made *no* attempt to respond to Defendants' document requests or interrogatories, nor did he ask for an extension of time to respond to those requests.

---

[5] A true and accurate copy of the dismissal order is attached as Exhibit E.

[6] A true and accurate copy of Plaintiff's unsigned response to Defendants' requests for admission is attached as Exhibit F.

5

On May 26, 2004, counsel for Defendants requested that Plaintiff respond to Defendants' discovery requests.[7] Defendants warned Plaintiff that his unsigned responses to Defendants' requests for admission were unacceptable and asked Plaintiff to "promptly and appropriately respond to [all outstanding] discovery requests." Plaintiff ignored this request. As a consequence, the discovery deadline in this case has come and gone, and as of the date of this filing, Plaintiff has not propounded valid responses to any of Defendants' outstanding discovery requests, nor made any discovery requests of his own.

## IV.   LAW AND ARGUMENT

### A.   Standard Of Review.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when no genuine issues of material fact are presented by the case, and the moving party is entitled to judgment in its favor as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A party seeking summary judgment is charged with the burden of informing the court of the basis for the motion and identifying the evidence that shows the absence of genuine issues of material fact on any essential element of the claims of the non-moving party. *Id.* Summary judgment must be granted is the party who bears the burden of proof does not establish a genuine issue of material fact as to each essential element of the case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995).

As the facts below demonstrate, Defendants meet the summary judgment standard with respect to all of Plaintiff's claims.

---

[7] A true and accurate copy of the May 26, 2004 correspondence is attached as Exhibit G.

COL - 94332.2

**B.     Defendants Are Entitled To Summary Judgment Because Plaintiff's Claims Are Barred By The Doctrine Of _Res Judicata._**

      **1.     The final judgment of the State Court Action is entitled to the full faith and credit of this Court.**

Title 28 U.S.C. § 1738 provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." Furthermore, the Supreme Court has held that 28 U.S.C. § 1738 "requires a federal court to look first to state preclusion law in determining the preclusive effects of a state court judgment." _Marrese v. American Academy of Orthopaedic Surgeons_, 470 U.S. 373, 381 (1985). _See also, Stone v. Williams_, 970 F.2d 1043, 1054 (2d Cir. 1992) (28 U.S.C. § 1738 "places upon federal courts the same burden as the Constitution's Full Faith and Credit Clause places upon state courts – to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.") (internal quotation marks and citation omitted).

      **2.     The doctrine of _res judicata_ in Ohio.**

Ohio has adopted and follows the "modern application of the doctrine of _res judicata._" _Shelar v. Shelar_, 910 F. Supp. 1307, 1311 (N.D. Ohio 1995). In Ohio, a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. _See Grava v. Parkman Township_, 653 N.E.2d 226, 227 (Ohio 1995) (syllabus) (overruling _Norwood v. McDonald_, 52 N.E.2d 67 (Ohio 1943)). Whether claims "arise out of the same transaction" depends on their logical relation. When "[the claims] involve many of the same factual issues, or . . . where they are offshoots of the same basic controversy between the parties," they are the proper subject of the effect of _res judicata. Shelar_, 910 F. Supp. at 1311 n.2.

7

3. **The preclusive effect of a state court's judicial review of an administrative finding.**

An adjudication on the merits of a party's application for judicial review of an administrative determination has preclusive effect. For example, in *Stallings v. Goshen Dairy Stores, Inc.*, No. 95-3228, 1996 U.S. App. LEXIS 19128 (6th Cir. 1996)[8], the Sixth Circuit affirmed this Court's grant of summary judgment to a defendant because of the preclusive effect of a state court's ruling on the plaintiff's application for judicial review of a no probable cause determination on the plaintiff's claim of age discrimination. The state court found that the OCRC's determination was not arbitrary or capricious and upheld the OCRC's decision that no probable cause supported the plaintiff's age discrimination charges. Thereafter, plaintiff filed discrimination claims in this Court, and this Court granted summary judgment because of the preclusive effect of the state court's decision to uphold the OCRC's determination.

On appeal, the Sixth Circuit affirmed this Court's grant of summary judgment pursuant to the doctrine of *res judicata*. The Sixth Circuit agreed with this Court's finding that *res judicata* prevented Stallings from relitigating his matter in Ohio state courts. The court found that 28 U.S.C. § 1738, *supra*, prevented the plaintiff from bringing in federal court what he could not bring in Ohio courts. In sum, the Sixth Circuit recognized that the "panoply of administrative and judicial procedures" offered to the plaintiff satisfied Due Process requirements, and that this Court rightfully determined that the plaintiff's case could not be heard again. *Stallings* at *12.

4. **Plaintiff's State Court Action bars this action.**

The dismissal of Plaintiff's State Court Action for noncompliance with Ohio Civil Rule 37 was a "final judgment rendered upon the merits." *See* Ohio Civ. R. 37. *See also Austin v. Miami Valley Hospital*, 483 N.E.2d 1185 (Ohio Ct. App. 1984) (fn 1). Like the plaintiff in

---

[8] Attached at Tab 1.

*Stallings,* the final judgment in the State Court Action would bar Plaintiff from refiling his case in Ohio state courts and, likewise, bars him from filing his claims in this Court. Put simply, the final judgment on the merits of Plaintiff's prior State Court Action precludes the Plaintiff from relitigating issues that were ***or could have been raised*** in a prior action. *Kane v. Magna Mixer Co.,* 71 F.3d 555, 560 (6th Cir. 1995); *see also Rivers v. Barberton Bd. of Education*, No. 96-4404, 143 F.3d 1029 (6th Cir. 1998). The *res judicata* effect of the final judgment in the State Court Action precludes Plaintiff's gender discrimination claim and all other claims which are "offshoots of the same basic controversy between the parties." *Shelar*, 910 F. Supp. at 1311 n.2. Because all of Plaintiff's claims for relief arise from a common nucleus of facts – *i.e.*, the elimination of his position with UHFS – they are barred by the doctrine of *res judicata*.

### C.    Defendants Are Entitled To Summary Judgment On The Merits.

#### 1.    Plaintiff cannot establish a prima facie case of discrimination.

It is well-established that the burden is on an employment discrimination plaintiff to establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).[9] Under *McDonnell Douglas* and *Burdine*, plaintiffs can establish a prima facie case of discrimination by showing that (1) they were a member of a protected class; (2) they were discharged; (3) they were qualified for the position; and (4) they were replaced by a person outside the class.

This framework is further modified if a plaintiff is discharged in connection with a reduction of force. In such a case, the plaintiff is not required to plead the fourth prong of the prima facie framework because in a reduction-of-force situation the plaintiff is not in fact

---

[9] The *McDonnell Douglas/Burdine* formula is the evidentiary framework applicable not only to claims brought under Title VII, but also to claims of discrimination under Ohio state law. *In re Brantley*, 518 N.E.2d 602 (Ohio Ct. App. 1987).

replaced. *See Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998). Instead, the plaintiff must present "'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons.'" *Id.* (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)) (brackets in original).  If the plaintiff makes out a prima facie case, the burden then shifts to the defendant to produce evidence of a non-discriminatory reason for its action, which will necessarily be the alleged reduction in force. *See id.*; *McDonnell Douglas,* 411 U.S. at 802-03. The burden then returns to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. *See Scott*, 160 F.3d at 1126; *McDonnell Douglas,* 411 U.S. at 802-03.

Because the incontrovertible evidence demonstrates that Plaintiff was terminated as part of a genuine reduction in force, he must establish that there was "additional direct, circumstantial, or statistical evidence" tending to indicate that UHFS singled him out for elimination for impermissible reasons in order to survive summary judgment. *Id.* Plaintiff cannot meet this burden.

In his Complaint, Plaintiff broadly alleges that he was discriminated against on the basis of his gender (male), race (African-American) and age (over 40). *See* Complaint at ¶5. Yet, the incontrovertible facts reveal that, of the six employees who were laid off in August 2002, Plaintiff was the only male. Pasco Aff. at ¶7. As to his claims of race and age discrimination, Plaintiff's job duties were assumed by two existing UHFS employees, both of whom were also African-American and virtually the same age as Plaintiff. *Id.* at ¶16. Plaintiff has not, and cannot, muster any evidence to counter the inescapable conclusion that he was not "singled out" on the basis of his age, race or gender.  Having failed to establish a prima facie case of

10

discrimination under any protected basis, Plaintiff's claims for age, race and gender discrimination should be dismissed.

### 2.    Plaintiff cannot show that UHFS' reduction in force was pretextual.

Even if Plaintiff could establish a prima facie case of discrimination, he still would not prevail unless he could show that Defendants' proffered reason for job elimination – the reduction in force – was pretextual. "An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998).

Here, the undisputed evidence illustrates that Plaintiff's position was eliminated because UHFS determined that his primary job functions could be handled by the UHC mail delivery service at a lower cost. Pasco Aff. at ¶8. Due to growing financial constraints, UHFS eliminated a number of positions, including Plaintiff's. *Id.* at ¶7. Again, five of the six employees discharged in August 2002 were female, and two African-American employees virtually the same age as Plaintiff assumed his job duties following the reduction in force. *Id.* at ¶¶7, 16. The ages of the six employees impacted by the reduction in force were 25, 31, 45, 45, 47 and 55. *Id.* at ¶7. Reasonable minds cannot draw a statistical inference of age bias from these limited numbers, especially given the fact that Plaintiff's job duties were assumed by two other UHFS employees who were 44 and 45 years of age, respectively. *Id.* at ¶16. Given these undisputed facts, Plaintiff cannot prove that the reduction in force was pretextual. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims of age, race and gender discrimination.

### 3.    Plaintiff's emotional distress claims fail as a matter of law.

Plaintiff has also filed claims for alleged intentional and negligent infliction of emotional distress. *See* Complaint at Counts Six & Seven. Both claims fail as a matter of law.

11

First, Plaintiff claims that he is the victim of an "intentional infliction of emotional distress" as a result of UHFS' decision to eliminate his position. *See* Complaint at ¶¶30-37. The Ohio Supreme Court holds that a plaintiff may seek damages based on a claim of intentional infliction of emotional distress only if "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 453 N.E.2d 666, 671 (Ohio 1983) (quoting RESTATEMENT (SECOND) OF TORTS § 46 (1965)).

Here, however, Plaintiff fails to allege any facts beyond those supporting his claims of discrimination. His termination, standing alone, even if based upon discrimination, does not rise to the level of "extreme and outrageous conduct" without proof of something more. Otherwise, *every* discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress. *See, e.g., Baab v. AMR Services Corp.*, 811 F. Supp. 1246, 1269 (N.D. Ohio 1993) ("[T]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement."); *Bryans v. English Nanny & Governess Sch., Inc.*, 690 N.E.2d 582, 592 (Ohio Ct. App. 1996) (holding that even if the plaintiff-student proved her claim of discrimination on the basis of disability, the school's conduct was "not so extreme or outrageous as to be intolerable in a civilized community").

Additionally, in order to establish "serious" or "severe" emotional distress, a plaintiff must show that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress generated by the circumstances of the case." *Reynolds v. Wingers, Inc.*, 621 N.E.2d 1239, 1243 (Ohio Ct. App. 1993). That is not the case here. Plaintiff has obviously

12

coped with any mental distress because he continues to work for the very entity which allegedly caused his mental distress in the first place. Pasco Aff. at ¶20.

Based on these facts, reasonable minds can come to but one conclusion: Plaintiff was not the victim of an intentional infliction of emotional distress as a result of UHFS' decision to eliminate his position. Accordingly, Defendants are entitled to summary judgment on Count Six of the Complaint.

Next, in Count Seven of the Complaint, Plaintiff claims that Defendants negligently inflicted emotional distress upon him by terminating his employment. Complaint at ¶¶38-45. Ohio courts consistently have held that "a plaintiff may only recover for emotional harm negligently inflicted by a defendant by instituting a 'traditional' claim for negligent infliction of emotional distress." *Tschantz v. Ferguson,* 647 N.E.2d 507 (Ohio Ct. App. 1994. *See also, Dobran v. Franciscan Med. Ctr.,* 806 N.E.2d 537 (Ohio 2004). In other words, in order to recover on a claim for negligent infliction of emotional distress, a plaintiff must demonstrate that he: "(1) was a bystander to an accident; (2) reasonably appreciated the peril thereof; and (3) suffered serious and foreseeable emotional distress as a result of his cognizance or fear of the peril." *Tschantz,* 647 N.E.2d at 521.

Here, of course, Plaintiff does not allege that he was a bystander to an accident. Rather, his claim for negligent infliction of emotional distress solely is based on UHFS' decision to eliminate his position as part of its overall reduction in force. Under *Tschantz,* Plaintiff cannot state such a claim against Defendants and, accordingly, Count Seven of the Complaint should be dismissed.

### 4.   Plaintiff's implied contract claim finds no support in the facts.

In Ohio, employment is generally at-will unless otherwise agreed to by the parties. *See Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1040 (6th Cir. 1992). That is the case here.

Plaintiff did not have a contract of employment with UHFS. Rather, he was an at-will employee, and his employment could be terminated at any time, for any reason. Pasco Aff. at ¶19. Apparently recognizing that fact, Plaintiff attempts to cast his contract claim as an "implied" one, which provided that he "would be treated fairly during his working life, and that his gender would not affect his working status." Complaint at ¶27.

Assuming for the moment that Plaintiff could pursue damages on a theory of "implied contract," that claim rises or falls on Plaintiff's ability to prove that he was the victim of gender discrimination. As demonstrated above, however, Plaintiff's gender discrimination claim fails because: (i) the doctrine of *res judicata* prevents him from relitigating the claim; (ii) he cannot prove the prima facie elements of such a claim; and (iii) even if he could prove the prima facie elements, he could not demonstrate that the reduction in force was pretextual. For the same reasons, Count Five of the Complaint likewise fails and should be dismissed.

> **D.     Plaintiff Failed To Satisfy A Condition Precedent For Asserting Title VII Race And Gender Discrimination Claims Against UHHS And A Title VII Race Claim Against UHFS.**

A right-to-sue letter is a condition precedent for bringing Title VII race and gender discrimination claims. *See, e.g., Rivers v. Barberton Bd. of Education,* No. 96-4404, 143 F.3d 1029 (6th Cir. 1998). Plaintiff never received a right to sue letter with regard to UHHS because Plaintiff never filed a charge of discrimination against UHHS with the OCRC. *See* Exh. B. As to both Defendants, Plaintiff never received a right to sue letter for race discrimination because Plaintiff never charged either Defendant with race discrimination until he filed this action. *Id.* Accordingly, UHHS is entitled to summary judgment as to Plaintiff's Title VII race and gender discrimination claims, and UHFS is entitled to summary judgment as to Plaintiff's Title VII race discrimination claim.

14

E.   **UHHS Did Not Employ Plaintiff At Any Time Relevant To The Allegations Of The Complaint And, Therefore, Bears No Liability To Plaintiff Under *Any* Theory Of Recovery.**

Above and beyond all of the reasons set forth above, Plaintiff's claims against UHHS fail for another reason: UHHS was not Plaintiff's employer at any time relevant to the allegations of the Complaint. Pasco Aff. at ¶20. All of Plaintiff's claims for relief are, of course, predicated upon an employee-employer relationship. That relationship did not exist between Plaintiff and UHHS at any period of time during which Plaintiff was allegedly discriminated against. For this additional reason, all eight counts of the Complaint should be dismissed in favor of UHHS.

F.   **Plaintiff's Admissions Leave No Opportunity For Him To Create An Issue Of Material Fact.**

The incontrovertible facts, as set forth in the affidavit of David Pasco, cannot be altered by Plaintiff. In addition to the fact that Plaintiff cannot dispute the gender, race and age of the other employees involved in the reduction in force, he cannot state *any* fact in support of his claims because he has already admitted that he cannot do so. Specifically, by failing to properly respond to Defendants' requests for admission, Plaintiff has effectively admitted to the sum and substance of those requests.

Admissions obtained pursuant to Fed. Civ. R. 36 may be used to support a motion for summary judgment to establish that there is no genuine issue of material fact. *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988); *In re Mack*, 330 F. Supp. 737 (S.D. Tex. 1970). This is true even if the request is deemed admitted because the opposing party failed to respond to the request. *Creedon v. Taubman,* 8 F.R.D. 268 (N.D. Ohio 1947); *Lovejoy v. Owens*, No. 94-4224, 1996 WL 287261[10]; *Price v. Total Building*

---

[10] Attached at Tab 2.

*Service, Inc.* (6th Cir. 1996), No. 96-1227, 1996 U.S. App. LEXIS 29095 (6th Cir. Oct. 30, 1996)[11].

In addition, Fed. Civ. R. 26(g)(2) requires that:

> [e]very discovery request, response, or objection made by a party represented by an attorney ***shall be signed by at least one attorney of record in the attorney's individual name***, whose address shall be stated. *** ***If a request, response, or objection is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the party*** making the request, response, or objection, and a party shall not be obligated to take any action with respect to it until it is signed. (Emphasis added).

In this case, Plaintiff ignored the requirements of Fed. Civ. R. 36 and Fed. Civ. R. 26(g)(2). Plaintiff attempted to respond to Defendants' requests for admission by typing in "admit" or "deny" directly onto Defendants' pleading and faxing the same to Defendants around 7:00 p.m. on the evening the responses were due. *See* Exh. F. Plaintiff did not even bother to replace Defendants' certificate of service or to prepare a certificate of his own. *Id.* In essence, Plaintiff typed a "deny" or "admit" onto Defendants' pleading and returned the otherwise unchanged document to Defendants. Plaintiff did not even sign his responses to the requests for admission, even after Defendants brought this deficiency to his attention. *Id.*

A party's requests for admission may be deemed admitted where a party timely responds to the requests for admissions, but the responses are unsigned. *Sorge v. Greater Parma Umpires Assn.*, No. 38763, 1979 Ohio App. LEXIS 9051 (Ohio Ct. App. May 10, 1979)[12]. Given Plaintiff's egregious course of conduct throughout this litigation (dating back to the State Court Action), Plaintiff's purported "responses" should be stricken and the matters deemed admitted.

---

[11] Attached at Tab 3.

[12] Attached at Tab 4.

COL - 94332.2

Because Plaintiff failed to respond to Defendants' requests for admission, Plaintiff has conclusively admitted, among other things, that: (i) he was not retaliated against by Defendants; (ii) he did not suffer any discrimination by Defendants; (iii) he did not suffer any damages as a result of the employment action taken by Defendants; and (iv) he was discharged pursuant to a legitimate reduction in force. *See* Request for Admission Nos. 5, 6, 7, and 8, respectively at Exh F.  Plaintiff also admits that he can prove no set of facts to support any of the statutory claims raised in his Complaint. *See* Request for Admission Nos. 9, 10, 11, and 12, at Exh. F. Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate where admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Here, the matters admitted by Plaintiff leave no genuine issue of material fact in this case, and Defendants are entitled to judgment in their favor as a matter of law.

G.  **Given Plaintiff's Complete Disregard Of The Discovery Process, Plaintiff Should Not Be Permitted To Support His Claims Against Defendants.**

Rule 37 of the Federal Rules of Civil Procedure permits the Court to impose sanctions against a party that fails to respond to properly served discovery requests.  Specifically, Rule 37(d) provides in relevant part:

> If a party ... fails ... (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subsections (A), (B), and (C) of subdivision (b)(2) of this rule.

Among the sanctions authorized under subsection (b)(2)(B) of Rule 37 are orders refusing to allow the disobedient party to support or oppose designated claims or defenses.

17

As discussed *supra*, on March 23, 2004, Defendants served interrogatories and requests for production of documents on Plaintiff. In their discovery requests, Defendants requested information and documents that supported Plaintiff's allegations in his Complaint. *See* Interrogatory Nos. 4-6 and Request for Production Nos. 1, 2, 5, 8-9, and 11.[13] Defendants also requested information and documents related to Plaintiff's alleged injuries and damages claims. *See* Interrogatory Nos. 9-11, and 13 and Request for Production Nos. 10-12 at Exh. H.

Despite repeated requests by Defendants, Plaintiff has failed to respond to Defendants' discovery requests, and Plaintiff has not provided Defendants with *any* evidence to support the claims asserted in his Complaint. *See* Exh. G. By failing to provide Defendants with even basic information or documents related to any of his claims, Plaintiff has severely prejudiced Defendants' ability to prepare for the trial of this matter. This Court should not permit Plaintiff to support his claims against Defendants, when Plaintiff has failed for more than *three months* to provide *any* type of response to Defendants' interrogatories and requests for production.

### H.   Plaintiff's Complaint Should Be Dismissed With Prejudice Because Of His Failure To Prosecute.

Alternatively, Plaintiff's Complaint should be dismissed because of his failure to prosecute. Rule 41(b) of the Federal Rules of Civil Procedure provides:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against the defendant.

Throughout the discovery period, Plaintiff refused to prosecute his case against Defendants by failing to respond to Defendants' discovery requests. Unfortunately, Plaintiff's antics in this case are consistent with his actions in earlier proceedings against the Defendants. Plaintiff's failure to prosecute the State Court Action led to the dismissal of that case with

---

[13] A true and accurate copy of Defendant's Interrogatories and Request for Production are attached hereto as Exhibit H.

prejudice, and immediately preceded his failure to prosecute this action. Plaintiff's disregard for this Court's authority and opposing counsel's time cannot be tolerated. Plaintiff's failure to prosecute his Complaint has caused (and continues to cause) Defendants to incur unnecessary costs and attorneys' fees associated with this action. As a result of Plaintiff's utter disregard for the judicial process and his failure to prosecute his claims, Defendants are entitled to judgment as a matter of law.

## V.     CONCLUSION

There are no issues of material fact regarding any of the claims asserted in Plaintiff's Complaint and, based upon the undisputed facts, Defendants are entitled to judgment as a matter of law. Alternatively, the Complaint should be dismissed due to Plaintiff's complete failure to prosecute his claims, or to respond to even the most basic discovery requests. For all of the reasons set forth above, Defendants respectfully request that this Court grant judgment in their favor with respect to Plaintiff's Complaint.

Respectfully submitted,

OF COUNSEL:

HAHN LOESER & PARKS LLP

_____/s/ James M. Drozdowski_____
James M. Drozdowski (0065215)
Steven E. Seasly (0070356)

3300 BP Tower
200 Public Square
Cleveland, Ohio 44114
(216) 621-0150 – telephone
(216) 241-2824 – facsimile
jmdrozdowski@hahnlaw.com
sseasly@hahnlaw.com

Attorneys for Defendants
University Hospital Health System and
University Hospitals Faculty Services, Ltd.

19

## CERTIFICATE OF SERVICE

A copy of Defendants University Hospital Health System and University Hospitals Faculty Services, Ltd.'s Motion for Summary Judgment, or in the Alternative, Motion to Dismiss for Failure to Prosecute and Memorandum in Support was served electronically and by regular U.S. mail, this 30th day of July, 2004 to the following:

> Oscar Trivers, Esq.
> TRIVERS & DICKERSON, LLC
> 925 Euclid Avenue
> 1025 Huntington Building
> Cleveland, Ohio  44114-1431
>
> Attorney for Plaintiff

> _____/s/ James M. Drozdowski_____
> One of the Attorneys for Defendants
> University Hospital Health System and
> University Hospitals Faculty Services, Ltd.

20

COL - 94332.2